# Thurston, Appellant, *v.* Assets Realization Company (No. 1).

*Promissory notes—Fraud—Consideration.*

1. Where promissory notes have been discounted by a trust company in the regular course of business before maturity for value and suit is brought upon them against the maker, the burden is on the latter to show that the notes were obtained from him by a fraudulent representation, were without consideration, and that the trust company had knowledge of the fact. In such a case knowledge by an officer of the company, who had committed the fraud for his own profit, will not be deemed knowledge of the company.

2. An independent fraud committed by an agent on his own account is not within the scope of his employment, and where he acts or makes declarations not in execution of any duty that he owes to his employer, nor within any authority possessed by him, but to advance his own personal interests, his knowledge of the transaction is not to be imputed to his principal.

*Practice, C. P.—Trial by judge—Findings of fact—Review.*

3. Findings of fact by a trial judge are no more reviewable on appeal than is the verdict of a jury where there is evidence which will support them.

Argued April 29, 1914. Appeal, No. 142, April T., 1914, by plaintiff, from decree of C. P. Allegheny Co., July T., 1913, No. 1,877, on bill and cross bill in equity in case of Leon Thurston, I. Leonard Aronson, Martin Burke and B. B. Wechsler v. Assets Realization Company. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Affirmed.

Bill in equity to enjoin certain actions of assumpsit on promissory notes.

The defendant filed a cross bill, praying for a determination of the liability of the plaintiffs on the notes in question.

EVANS, J., found the facts to be as follows:

1. The notes held by the defendant, the Assets Realization Company, and upon which they seek to recover

against the several plaintiffs to this bill, were obtained originally by J. D. Easter, treasurer of the Mt. Washington Savings & Trust Company, on the false and fraudulent representation that the notes in question were received as payment for the subscription to capital stock of the Mt. Washington Savings & Trust Company.

2. At the time that Easter obtained the several original notes, of which the notes sued upon are renewals, there was no treasury stock of the Mt. Washington Savings & Trust Company open to subscription and the makers of the several notes never received any consideration for the notes which they executed and gave to Easter. The original notes were given in December, 1907, and at a meeting of the board of directors of the Mt. Washington Savings & Trust Company on April 24, 1908, renewals of the original notes were presented to the board of directors for purchase by the bank as follows: I. Leonard Aronson, $400; I. Leonard Aronson, $300; I. Leonard Aronson, $300; E. B. Wechsler, $125; Leon Thurston, $500. By resolution of the board these several notes were purchased and paid by the bank by its check on the Cosmopolitan National Bank of Pittsburg, but it does not appear to whom the money was paid. The proceeds of the several notes, however, were never paid to the Mt. Washington Savings & Trust Company, nor did the board of directors know anything about the circumstances under which the notes had been originally given. At the board meeting of the said bank on May 5, 1908, a renewal note of Martin Burke for $1,000 was presented to the board of directors for purchase by the bank and by resolution of the board the said note was purchased and paid for by its check on the Cosmopolitan Bank, but to whose order that check was made does not appear. The bank, however, never received any of the proceeds of the discount of that note and no knowledge upon the part of the directors of the circumstances of the execution of the original note appears. The purchase of these several notes was be-

fore their maturity and in the regular course of business.

3. Some time in the fall of 1903 the Mt. Washington Savings & Trust Company went into liquidation and the notes in question were purchased from the Mt. Washington Savings & Trust Company by the Assets Realization Company for a valuable consideration, and with the consent of the board of directors and a majority of the stockholders. There was no conspiracy or fraud on the part of either the officers or stockholders of the Mt. Washington Savings & Trust Company or the officers of the Assets Realization Company.

### CONCLUSIONS OF LAW.

1. The knowledge of J. D. Easter, Jr., the treasurer and executive officer of the Mt. Washington Savings & Trust Company, of the fraud which he himself had committed in obtaining the notes from the several plaintiffs to this bill, was not notice to the Mt. Washington Savings & Trust Company of the fraud in obtaining the notes.

2. The Mt. Washington Savings & Trust Company purchased the notes in question for a valuable consideration, before maturity, in the regular course of business, and without knowledge of any defense.

3. The Mt. Washington Savings & Trust Company, having purchased the several notes before maturity, the fact that it sold the notes to the Assets Realization Company after maturity does not bar the latter's right to recover on the notes because of the fraud practiced by Easter in obtaining the notes.

4. Judgment for the Assets Realization Company, the plaintiff in the cross bill, should be entered against I. Leonard Aronson, E. B. Wechsler, Leon Thurston, and Martin Burke.

*Error assigned* was the decree of the court.

*J. Boyd Duff,* with him *L. K.* and *S. G. Porter* and *Aronson & Aronson,* for appellants.—The knowledge of

the authorized agent acquired in the course of a given transaction within scope of the agent's authority is the knowledge of the principal: Nat. Bank of Bedford v. Stever, 169 Pa. 574; First Nat. Bank v. Gerli, 232 Pa. 465; Conmey v. Macfarlane, 97 Pa. 361.

*Donald Thompson*, with him *Blakeley & Calvert*, for appellee.—The knowledge was not the knowledge of the company: Pauley v. American Surety Co., 170 U. S. 133; Gunster v. Scranton Illuminating Heat & Power Co., 181 Pa. 327; United Security, etc., Co. v. Central Nat. Bank of Phila., 185 Pa. 586; Chestnut Street Trust, etc., Co. v. Record Pub. Co., 227 Pa. 235; Brookhouse v. Publishing Co., 2 L. R. A. 993; Mutual Trust Co. v. Stern, 235 Pa. 202; Pollock v. Standard Steel Car Co., 230 Pa. 136.

OPINION BY HENDERSON, J., July 15, 1914:

By agreement of counsel this case was tried as though it were an action at law submitted to the judge to be determined by him without a jury.   Appeals were taken by all of the defendants and the arguments covering each case were presented in a single paper-book.   The learned trial judge found as a fact on competent evidence that the notes were discounted by the Mt. Washington Savings & Trust Co. in the regular course of business before maturity for value, and without knowledge on the part of the board of directors of any defense.   They were regular on their face and it is conceded that they were signed by the respective makers.,   The burden rested on the defendant, therefore, to show that they were obtained by fraudulent representations of J. D. Easter and were without consideration and that the trust company had knowledge of the fact. The testimony satisfied the trial judge that the trust company took the notes in good faith for a valuable consideration before maturity and we have not discovered after an examination of the testimony that

this was an erroneous conclusion. Indeed, it is scarcely denied that whatever consideration was received in the transaction went to Easter or to Richmond whose stock Easter probably intended to deliver to the several defendants when their notes were paid. The representation that the stock which he proposed to sell to the makers of the note was "Treasury Stock" of the bank, was not made in the interest of the bank nor by authority of the board of directors, and if the consequence of this misrepresentation was that the defendants gave their notes for the stock it is not apparent under the evidence how the bank could be charged with notice of such misrepresentation. The weight of the evidence sustains the finding of the court that when the renewal notes were presented to the board of directors for discount on April 24, 1908, and May 5, 1908, by the finance committee there was nothing on the notes nor anything communicated in connection with them to inform the board of directors that they were in any way related to the sale of stock by Easter. Mr. Smith, one of the witnesses for the defendants, and a director of the bank, testified that he did not know that the notes were anything more than the usual commercial paper. The learned counsel for the appellants have presented a very earnest argument to show that the trial judge should have reached a different conclusion on all the facts, but the case is not to be reversed because a different finding might have been made by the court below. Findings of fact by a trial judge are no more reviewable on appeal than is the verdict of a jury where there is evidence which will support them. The most that can be claimed under the findings of the court is that Easter and Richmond entered into a combination to sell a portion of Richmond's stock in the trust company and that the sale was promoted by representations of Easter that it was "Treasury Stock," but the knowledge of Easter as to the origin of the notes of which the notes in suit were renewals

is not to be imputed to the bank. He was not appointed to dispose of Richmond's stock nor to perpetrate a fraud. Whatever advantage arose out of the transaction inured to his benefit or that of Richmond. The scheme was concocted for personal advantage and, if a fraud on the persons who gave their notes, was not a transaction in the course of business of the trust company. On such a state of facts the rule that knowledge or notice on the part of the agent is to be treated as notice to the principal does not apply. An independent fraud committed by an agent on his own account is not within the scope of his employment, and where he acts or makes declarations not in execution of any duty that he owes to his employer nor within any authority possessed by him but to advance his own personal interests his knowledge of the transaction is not to be imputed to his principal. The question is discussed in Gunster v. Scranton, etc., Co., 181 Pa. 327, and United Security, etc., Co. v. Cen. National Bank, 185 Pa. 586. It was recognized in these cases as being contrary to human experience that an agent engaged in committing a fraud in his own interest or to the prejudice of his principal would communicate his knowledge to his principal and that a presumption that the latter had some knowledge from his agent could not logically arise under such circumstances. The same distinction is expressed in American Surety Co. v. Pauly, 170 U. S. 133. As the defense rests on the alleged deceptive misconduct of one or more of the officers of the trust company and such deception was intended to result to their advantage or the advantage of one of them the trust company was not bound by their acts or declarations in the absence of evidence that it had at the time actual notice of what was done by them. The trial judge was therefore clearly within the limits of the evidence and the law applicable thereto in holding that as between the trust company and the makers of the notes an effective defense was not presented, and if the defense

is not available against the trust company it cannot prevail against the plaintiff for so far as this case shows it acquired a legal title to the claims of the trust company against the appellant. In a review of the whole case we fail to discover reasons justifying a reversal.

The judgments are affirmed.