**FIRST NAT. BANK OF WEATHERLY,
PA., v. ÆTNA CASUALTY &
SURETY CO.**

No. 6933.

Circuit Court of Appeals, Third Circuit.

June 29, 1939.

Joseph J. Brown, John Arthur Brown, and D. Alexander Wieland, all of Philadelphia, Pa., for appellant.

Rawle & Henderson, of Philadelphia, Pa. (Thomas F. Mount and Joseph W. Henderson, both of Philadelphia, Pa., of counsel), for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

MARIS, Circuit Judge.

The plaintiff has appealed from a judgment of the District Court for the Eastern District of Pennsylvania in a suit on a fidelity bond. The case was tried without a jury. The following is a summary of the stipulated facts:

From September 2, 1929, to September 10, 1936, John N. Trezise was employed by the appellant bank as its cashier. Up to May 18, 1935, his fidelity and that of other employees was insured under a fidelity schedule bond executed by the appellee. The appellant's board of directors resolved that it should purchase a banker's blanket bond and authorized Trezise to sign the application therefor. The application dated May 27, 1935, was signed by Trezise, the appellant being named as the applicant. The banker's blanket bond was issued by the appellee and the schedule bond was cancelled as of May 18, 1935.

The appellee contended that it was induced to grant the coverage by reason of representations in the application which were in fact false and that the contract of coverage was therefore vitiated. The application read:

"The following information is given to the Company by the Applicant for the purpose of enabling the Company to decide with full knowledge of the facts whether or not to furnish the desired coverage.

"1. Name of Applicant. First National Bank.

\* \* \*

"8. (a) What losses are known to have been sustained during the past five years from any of the causes against which indemnity is to be given by the bond for which application is hereby made?

"(a) None

"(b) What means have you adopted to prevent a recurrence of such losses?

"(b) ———

\* \* \*

"The present officers and employees of the Applicant, of whom a complete list at this time, with positions held, is attached, have all, to the best of the Applicant's knowledge and belief, while in the service of the Applicant, always performed their respective duties faithfully. There has never come to the notice or knowledge of the Applicant any act, fact or information indicating or tending to indicate that any of the said officers or other employees are unreliable, deceitful, dishonest or unworthy of confidence. The habits of all the said officers and other employees of

the Applicant, to the best of the Applicant's knowledge and belief, are good."

Within the five year period preceding the issuance of the banker's blanket bond the appellant sustained a direct loss of $56,511 due to the fraud and dishonesty of Trezise. None of the losses sustained by the appellant was discovered by it until September 10, 1936. Notice and proof of loss were given to the appellee, which refused payment on the bond. No part of the premium paid the appellee by the appellant for the banker's blanket bond has been repaid or, up to the time of trial, tendered to the appellant.

It will thus be seen that one of the appellant's employees was dishonest and that losses were sustained by the appellant because of such dishonesty. The appellant contends, however, that it had no knowledge of its cashier's dishonesty and that in the absence of knowledge the representations made in the application were not false.

The appellant is a corporate entity. It can have no knowledge other than that of its individual directors and executive officers. In this case, Trezise, its cashier, must have known when he signed the application for the bond that the bank had sustained a loss because of his own dishonesty. Appellant claims that Trezise's knowledge cannot be imputed to it and cites numerous authorities to the effect that where the knowledge relates to the employee's own fraud it will not be imputed to the corporate employer. However great the number of such authorities and however sound the reasons they assign in support of such a principle it is inapplicable to the instant case unless it is the law of Pennsylvania as expressed by the appellate courts of the State. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct 817, 82 L.Ed. 1188, 114 A.L.R. 1487. We must therefore limit ourselves to the consideration of the Pennsylvania law.

A situation substantially similar to that presented to us on this appeal was before the Supreme Court of Pennsylvania in Gordon v. Continental Casualty Co., 319 Pa. 555, 181 A. 574, 104 A.L.R. 1238. In that case suit was brought to recover on a banker's blanket bond insuring against loss due to the dishonesty of a trust company's officers and employees. The casualty company urged that it was relieved of liability because in procuring the bond Matthews, who was secretary and treasurer of the trust company, perpetrated a fraud by falsely representing, in the written application for the bond, which he signed in the trust company's behalf, that no losses had been sustained by it from any of the causes against which indemnity was to be given, and that there had never come to the notice or knowledge of the trust company any fact or information indicating that any of its officers were dishonest or unworthy of confidence, whereas at that very time Matthews was an embezzler of the trust company's funds.

The trial court held this defence unavailing because Matthews' information of his own dishonesty was unknown to the trust company and his knowledge was not imputable to it, since in embezzling the money he was acting adversely to it. The Supreme Court reversed, Mr. Justice Schaffer, in the opinion of that court, saying (319 Pa. page 560, 181 A. page 575, 104 A.L.R. 1238):

" * * * Was the plaintiff at the time the bond was applied for visited with notice of Matthews' defalcation through his knowledge of his own dishonesty? Matthews was, as the testimony clearly shows, the chief executive and managing officer of the bank. He was its secretary and treasurer, its highest salaried officer, giving his full time to its business and affairs. The president was not salaried, but was engaged in other business and did not give his full time to plaintiff's affairs. The directors and president had instructed Matthews to procure the bond and had caparisoned him as the bank's representative in doing so. He was held out as its fit instrument to answer truthfully and fairly the queries which the defendant desired information upon to guide it in deciding whether it would assume the obligation to the bank. As our late brother, Mr. Justice Simpson, when the case was here before (311 Pa. 109, 111, 166 A. 557), clearly stated: 'On the faith of (Matthews') statements in the application, defendant issued the indemnity bond. * * * Plaintiff, being a corporation, could not personally have any knowledge on this subject (the honesty of its officers); consequently the language quoted (from the application) could only refer to knowledge of the executive officers, directors, or stockholders of plaintiff, among the first of which was the secretary-treasurer, who, of course, knew that he was an embezzler, yet was seeking to have defendant guaran-

tee his fidelity, which, presumptively at least, it would not do if the fact of that embezzlement was disclosed.'

"Under these circumstances, there would seem to be some confusion of thought in the application of the rule that a principal is not visited with notice through an agent where the agent at the time is acting adversely to his principal, and where it would be to the interest of the agent not to disclose his action or information to the principal. In procuring the bond, Matthews was not acting adversely to the bank, but in its behalf. The adverse act of embezzling the money had been consummated previously; in that transaction—the act of embezzlement—his knowledge of his own dishonesty did not carry through him to the bank, because he was then acting adversely to its interests. In arranging for the bond, however, this was not the case. * * *

"It is argued by appellant's counsel, and we think convincingly, that the adverse interest exception to the rule that knowledge of a corporate officer is knowledge of the corporation, applies only where a third person seeks to enforce some demand against the corporation (as in the Metropolitan Insurance Company Case [Metropolitan Life Ins. Company's Appeal, 310 Pa. 17, 164 A. 715, 86 A.L.R. 1301]), but the exception has no application where the corporation seeks to enforce the benefit of a fraud perpetrated by its officer on a third person; that the exception to the rule of imputed knowledge is not a vehicle for the consummation of fraud. * * *"

In the case before us when Trezise made the application, he was acting not for himself and adversely to the interest of the appellant, his employer, but for and in the interest of the latter. His knowledge, therefore, was the knowledge of the appellant. Applying the law of Pennsylvania as laid down in Gordon v. Continental Casualty Co., supra, we conclude that the representations contained in the application as to the honesty of the employees were knowingly false and that the banker's blanket bond in suit was, therefore, vitiated. The mere fact that the decision in Gordon v. Continental Casualty Co., supra, would seem to us somewhat out of line with the general trend of the authorities both in Pennsylvania and elsewhere cannot, under the case of Erie R. Co. v. Tompkins, above cited, be of more than academic interest to this court.

Tender of a return of the premium was made by the appellee October 17, 1938, in compliance with an order of the District Court. This was after trial and two years after the discovery of the loss. The appellant refused the tender as having been made too late. Without deciding whether the appellant was entitled to a return of the premium we are of the opinion that a tender of return of premium is not a condition precedent to a defense that the contract was obtained by fraud.

The judgment is affirmed.