**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4094
_____

CHARTER OAK INSURANCE COMPANY

v.

MAGLIO FRESH FOODS,
d/b/a
MAGLIO'S SAUSAGE COMPANY;
AMERICAN GUARANTEE AND LIABILITY
INSURANCE COMPANY

Maglio Fresh Food,
                              Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civil No. 12-cv-03967)
District Judge:  Honorable Michael M. Baylson
_____

Submitted Under Third Circuit LAR 34.1(a)
October 9, 2015
_____

Before: FUENTES, SMITH and BARRY, <u>Circuit Judges</u>

(Opinion Filed: November 4, 2015)
_____

OPINION[*]
_____

---

[*]  This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

BARRY, Circuit Judge

Appellant Maglio Fresh Foods ("Maglio") appeals the District Court's grant of summary judgment and entry of declaratory judgment in favor of Appellee American Guarantee & Liability Insurance Company ("American Guarantee," a subsidiary of Zurich American Insurance Company) on the issue of insurance coverage, and grant of judgment, following a bench trial, in favor of American Guarantee on Maglio's claims of bad faith and breach of contract. Because the Court correctly concluded that American Guarantee had no duty to defend or indemnify Maglio and properly rejected Maglio's claims of bad faith and breach of contract, we will affirm.

I.

Unfortunately, a rather full recitation of the facts and procedural history is necessary for an understanding of our analysis and ultimate decision. In 2010, Leonetti's, a supplier and competitor of Maglio, brought a lawsuit against it in the Court of Common Pleas of Philadelphia County. Leonetti's complaint cited several different causes of action, and the court interpreted the complaint as essentially raising two claims: the "Maglio brand claim" and the "Forte brand claim." The "Maglio brand claim" refers to Leonetti's claim that after terminating its private label manufacturing agreement with Leonetti's and finding a new manufacturer, Maglio continued to use boxes reflecting product information corresponding to Leonetti's stromboli, instead of the new manufacturer's stromboli. The "Forte brand claim" refers to Leonetti's claim that Maglio

2

sold stromboli under the "Forte" brand name, despite the fact that Leonetti's had purchased and obtained exclusive rights to distribute Forte brand stromboli.

A.     The Insurance Policies

In connection with the lawsuit, Maglio sought a defense and indemnity from its primary insurer, The Charter Oak Fire Insurance Company ("Charter Oak," a Travelers company), and its excess and umbrella insurer, American Guarantee.

The Charter Oak policy had a limit of $1,000,000, and covered claims for "advertising injury," which included injury arising out of "Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services . . . ." (App. 614.) It excluded coverage for advertising injury "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." (App. 496.)

The American Guarantee policy had a limit of $25,000,000, and provided both excess coverage, incorporating the same terms and conditions as the underlying insurance (here, the Charter Oak policy), and umbrella coverage pursuant to its own terms. The terms of the American Guarantee umbrella coverage likewise included coverage for "advertising injury" and included an identical "knowledge of falsity" exclusion.

The Charter Oak policy provided that it had a duty to defend Maglio against any suit seeking damages for advertising injury, and that its duty to defend would end when it had used up the limits of insurance for the payment of judgments or settlements. The American Guarantee policy stated that it had a duty to defend as an excess carrier "when

3

the applicable limit of underlying insurance has been exhausted by payment of claims for which coverage is afforded under this policy." (App. 396.)

B.     The Underlying Lawsuit

Charter Oak agreed to defend Maglio with regard to the allegations in the Leonetti's complaint subject to a reservation of rights. Charter Oak stated that only the allegations of "trade libel" were potentially covered as advertising injury under the policy, and agreed to indemnify Maglio up to its policy limit with respect to that claim only. In the complaint, the allegations of "trade libel" appeared under Count III, in which Leonetti's alleged that "[Maglio] made derogatory, misleading and untrue statements that would be understood by the average person to denigrate the quality of the stromboli manufactured and sold by Leonetti's under the Forte Brand and which would decrease the value of the Forte Brand." (App. 1891.) None of the specific "trade libel" allegations dealt with the facts of the Maglio brand claim.[1]

American Guarantee, through its parent company, Zurich, acknowledged Maglio's claim and corresponded with defense counsel. After receiving counsel's case analysis and copies of the pleadings, it determined that the case was unlikely to reach the excess layer of coverage and closed its file.

In 2011, the lawsuit proceeded to a jury trial on both claims, but a mistrial was declared as to the Forte brand claim due to a hung jury. Thereafter, on October 3, 2011,

---

[1] The tort of trade libel, in Pennsylvania, arises from "the publication of a disparaging statement concerning the business of another." Maverick Steel Co. v. Dick Corp./Barton Malow, 54 A.3d 352, 354 (Pa. Super. Ct. 2012).

the jury returned a verdict in favor of Leonetti's on the Maglio brand claim, awarding compensatory damages of $2,000,000 and punitive damages of $555,000.

Following the verdict, Charter Oak confirmed that it would continue to defend Maglio, pursuant to its reservation of rights, through any post-verdict motions and on re-trial of the Forte brand claim. American Guarantee was notified of the verdict and informed Maglio that it had no duty to provide defense or indemnity because Charter Oak was continuing to provide a defense and because the verdict on the Maglio brand claim was based on a claim for unfair competition that did not constitute "advertising injury" within the meaning of either insurance policy.

The court retried the Forte brand claim in December 2011. Prior to completion of the trial, Charter Oak informed Maglio that it was willing to pay its full $1 million limit of liability toward a settlement and dismissal with prejudice of all claims. The parties could not reach an agreement, however, and a jury again found in favor of Leonetti's, awarding compensatory damages of $660,000. In January 2012, Charter Oak deposited its policy limit ($1 million) plus post-judgment interest with the court, in order to halt the accrual of interest and facilitate settlement.

Settlement discussions ensued between Maglio, Leonetti's, and the insurers, but the case remained unresolved. Maglio indicated to its insurers that it lacked the assets necessary to obtain an appeal bond for the full amount of the judgment, and that it was therefore considering assigning its rights against the insurers to Leonetti's. Charter Oak stated that it would defend Maglio through appeal, subject to its reservation of rights, and

offered to pay the cost of an appeal bond up to its policy limit. It also offered to assist Maglio in obtaining an appeal bond for the balance of the judgment, and continued to state that its $1 million policy limit remained available for settlement. Meanwhile, counsel for Maglio, assisted by defense counsel, explored the possibility of obtaining an appeal bond and determined that it was not financially feasible for Maglio to itself obtain a bond, due to the company's financial condition.

In May 2012, the state court denied Maglio's post-trial motions and Maglio entered into a settlement agreement and assignment of rights with Leonetti's, awarding Leonetti's $4.5 million and assigning to Leonetti's its claims against the insurers. In the agreement, Maglio assigned all of its legal rights and claims arising out of or resulting from the underlying lawsuit, including "all contractual, extra-contractual, legal, statutory and equitable claims relating to legal malpractice, insurance, common law bad-faith, and statutory claims under 42 Pa. C.S.A. § 8371." (App. 2328.) Under the terms of the agreement, however, Maglio retained an interest in the outcome of claims against the insurers: it was entitled to 50% of any amount recovered in excess of $4.5 million, and if less than $2 million was recovered, it was responsible for paying up to $250,000 to Leonetti's. The settlement agreement further stated that it would be "automatically terminated, rescinded and considered null and void" if Maglio's insurers agreed to post an appeal bond before May 18, 2012. (App. 2325.)

Charter Oak thereafter informed Maglio that by entering into the settlement agreement and assignment of rights, Maglio breached its policy's "cooperation"

provision. Neither insurance company, nor Maglio, posted an appeal bond, and the verdicts were reduced to judgment. On July 16, 2012, the funds that had been deposited into court by Charter Oak were released to Leonetti's.

C.    The Present Action

On July 12, 2012, Charter Oak brought this action against Maglio, and against American Guarantee as a "nominal defendant," seeking a declaratory judgment that Leonetti's claims against Maglio in the underlying state court action were not covered under its policy. American Guarantee brought a cross claim seeking a similar declaratory judgment, and Maglio brought counter and cross claims for breach of contract and bad faith against the insurers.

On October 24, 2013, the District Court granted the insurers' motions for summary judgment and entered a declaratory judgment in their favor on the issue of coverage. The Court concluded that neither policy covered the Maglio brand claim because the only theory of liability presented at trial was "that Maglio knowingly misrepresented the quality, appearance, and contents of its own products." (App. 18.) It observed, as well, that Maglio failed to point to any evidence from the trial that it disparaged Leonetti's or its products. The Court held that even if the claim was covered as "advertising injury," it was excluded from coverage by the knowledge of falsity exclusion. Maglio's broker and sales manager, Richard Taubman, had admitted at trial that he "knew that the Maglio brand boxes did not accurately represent the product contained within them and that Maglio misled the public by using those boxes." (App.

7

19.) The Court concluded that Maglio also failed to meet its burden to show that the Forte brand claim was covered by the policies.

The litigation proceeded with respect to Maglio's claims against the insurers.[2] Just prior to trial, it was determined that although the parties had been acting under the assumption that the case was proceeding to a jury trial, in fact Maglio had failed to file a jury demand as required under Federal Rule of Civil Procedure 38. The docket notation stating "Jury Demand: Plaintiff" was determined to be a clerical error, acknowledged by the Clerk's office, and the docket also indicated that Maglio's counsel had previously filed a conference information report in which "non-jury trial" had been checked off. After this issue was identified, Maglio filed a motion for a jury trial under Federal Rule of Civil Procedure 39(b).

Following oral argument, the District Court denied Maglio's motion. Weighing the factors set forth by us in SEC v. Infinity Gr. Co., 212 F.3d 180, 195-96 (3d Cir. 2000), the Court determined that the issues were not well suited to a jury trial because the case was "to a . . . significant extent, governed by legal issues." (App. 3250.) The Court also observed that Maglio had provided no explanation for its failure to file a jury demand as required. The Court did, however, decide to proceed with a bench trial solely

---

[2] The Court had denied the insurers' motions for summary judgment on Maglio's claims because it determined that genuine issues of material fact existed, including issues as to (1) whether American Guarantee met its defense obligations to Maglio during the time between the first and second verdicts, (2) whether American Guarantee's obligations to Maglio changed after Charter Oak tendered its $1 million policy limit, and (3) whether American Guarantee's refusal to participate in Maglio's defense was reasonable.

on liability, with a promise to revisit the issue of a jury trial if the case proceeded to a damages phase.

Charter Oak settled with Maglio just prior to trial, and the District Court held a bench trial on the claims against American Guarantee. On August 8, 2014, the Court issued its findings of fact, and, on September 9, 2014, issued its conclusions of law and verdict, in favor of American Guarantee.

The District Court concluded that Maglio failed to meet its burden to show that American Guarantee acted in bad faith. It determined that Charter Oak's tender of its policy limits in December 2011 did not affect the obligation of American Guarantee to defend Maglio, because Charter Oak continued to defend and its policy limits had not been exhausted by the payment of claims. The Court also found that American Guarantee's conduct did not lack a reasonable basis, as it continued to be "watchful of its duty to Maglio" following the Forte brand verdict by hiring coverage counsel and closely monitoring the underlying action. (App. 55.) It determined, as well, that American Guarantee had no duty to post an appeal bond because the Charter Oak policy had not been exhausted by the payment of covered claims.[3]

This appeal followed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332 and we have

---

[3] At this stage of the proceedings, despite the District Court's October 24, 2013 holding that Charter Oak's policy did not cover the Forte brand claims, the parties agreed that Charter Oak had admitted coverage for the Forte brand verdict.

jurisdiction pursuant to 28 U.S.C. § 1291. We review a district court's order granting summary judgment de novo, applying the same standard as the district court. Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 514 (3d Cir. 2012). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. We review a district court's findings of fact following a bench trial for clear error, and exercise plenary review over its conclusions of law. Post, 691 F.3d at 514-15. We review a district court's denial of a request for a jury trial under Rule 39(b) for abuse of discretion. Infinity Gr. Co., 212 F.3d at 195.

### III.

On appeal, Maglio contends that the District Court erred in determining that American Guarantee was not obligated to indemnify it for the underlying verdicts and erred in rejecting its claims for bad faith and breach of contract.[4]

---

[4] Maglio also argues that the District Court abused its discretion in denying its motion for a jury trial, an argument we reject without further discussion. It contends, as well, that it has standing to prosecute this appeal or, in the alternative, that the Court erred in denying its petition to join Leonetti's in the federal court action. Neither party challenges Maglio's standing to pursue its claims; however, by virtue of its assignment of rights to Leonetti's, one could argue that Leonetti's, not Maglio, is the real party in interest. See Fed R. Civ. P. 17(a) (requiring that an action be prosecuted in the name of the "real party in interest"). In this case, however, Leonetti's interests are adequately protected by Maglio. When Maglio (unsuccessfully) moved in the District Court for joinder of Leonetti's, it represented that "the interests of Maglio and Leonetti's are perfectly aligned, and their claims against the two insurers are identical." (See Mem. in Support of Pet. for Joinder, at 2 (Dist. Ct. ECF No. 135).) This continues to be the case. In denying Leonetti's motion to intervene (for the first time) on this appeal, we likewise observed that Leonetti's "offers no reason to believe that Maglio will not adequately represent its

10

## A. Coverage

The "well-established rules of insurance contract interpretation" under Pennsylvania law provide that "[t]he task of interpreting [an insurance] contract is generally performed by a court rather than by a jury." 401 Fourth Street, Inc. v. Investors Ins. Gr., 879 A.2d 166, 171 (Pa. 2005). Interpretation of an insurance policy "is a question of law over which we exercise plenary review." Nationwide Life Ins. Co. v. Commonwealth Land Title Ins. Co., 579 F.3d 304, 307 (3d Cir. 2009). "Under Pennsylvania law, which applies to this action, we ascertain the intent of the parties by reading the policy as a whole, and we give unambiguous terms their plain meaning." Id.; see 401 Fourth Street, Inc., 879 A.2d at 171.

The plain language of the American Guarantee policy makes clear that neither its excess nor its umbrella coverage applied to the damages at issue. The October 2011 verdict, totaling $2.5 million, did not result from claims constituting "advertising injury" within the meaning of either policy, and the December 2011 verdict for $660,000 was covered by Maglio's underlying insurance (Charter Oak) within the limits of that policy.

---

interests in litigating the appeal on the merits." (Order Denying Mot. to Intervene, at 2.) In addition, under the terms of the settlement agreement, Maglio retains a financial interest in the outcome of the claims. For these reasons, we decline to dismiss this appeal for lack of standing, and find that Maglio is a real party in interest for purposes of Rule 17(a). See HB Gen. Corp. v. Manchester Partners, L.P., 95 F.3d 1185, 1188 (3d Cir. 1996) (referring to the rules of joinder as "flexible, pragmatic federal procedural rules"); ICON Gr., Inc. v. Mahogany Run Devel. Corp., 829 F.2d 473, 478 (3d Cir. 1987) (holding that "the essential purposes" of the real-party-in-interest rules of joinder "are to ensure that a judgment will have *res judicata* effect . . . and adequately to protect the interests of absent parties.").

As the District Court correctly concluded, the Maglio brand claim—the only claim adjudicated to verdict in the first state court trial—did not encompass a claim for trade libel or disparagement of Leonetti's products.[5] The only allegations of disparagement in Leonetti's amended complaint corresponded to the Forte brand claim, which only proceeded to verdict in the second trial. Nevertheless, Maglio contends that the jury in the first trial could have found that Maglio disparaged Leonetti's products because the evidence showed that it placed Leonetti's product information on inferior stromboli. As American Guarantee points out, however, there was no evidence at trial that any consumer ever knew that Leonetti's made a Maglio stromboli. The theory of liability on the Maglio brand claim was never that Maglio made disparaging statements about Leonetti's stromboli, but that it unfairly competed by making false statements about its own products. Maglio has failed to point to evidence indicating otherwise.

Even if we were to conclude that the Maglio brand claim fit within the definition of "advertising injury," the District Court properly determined that coverage was excluded under the "knowledge of falsity" exclusion. It is undisputed that Taubman, Maglio's broker and sales manager, testified that he knew the Maglio brand boxes contained false statements and did not accurately represent the product contained within them. Maglio does not dispute that Taubman acted as its agent with respect to stromboli sales, but contends that the policy exclusion applies only to actions done "by or at the

---

[5]  Because the first verdict did not encompass both covered and non-covered claims, Maglio's argument that the lack of specific jury findings as to each precludes American Guarantee from disclaiming coverage is unavailing.

direction of the insured," and that he was not "the insured." As the Supreme Court of Pennsylvania has held, however: "A corporation shall be held responsible for the knowledge which is possessed by those whom it appoints to represent it. From the nature of its constitution it can have no other knowledge than that of its officers, and, in dealing with such officers, as with the corporation itself, third parties have a right to consider that what they know it knows." Gordon v. Cont'l Cas. Co., 181 A. 574, 577-78 (Pa. 1935); see also W. C. A. B. v. Evening Bulletin, 445 A.2d 1190, 1192 (Pa. 1982) ("It is well settled in the law of this jurisdiction that knowledge of an agent, acting within the scope of his authority, real or apparent, may be imputed to the principal, and therefore, knowledge of the agent is knowledge of the principal." (internal citations omitted).) Because Taubman was an agent of Maglio acting within the scope of his duties, his knowledge is imputed to the corporation, the named "insured" under both policies.

The District Court did not err in granting summary judgment and a declaratory judgment in favor of American Guarantee with respect to coverage.

B.    Bad Faith

Having concluded that American Guarantee owed Maglio no duty of indemnity, it is difficult to conceive of how American Guarantee could have acted in bad faith by failing to defend it. Charter Oak provided Maglio with a defense throughout the underlying litigation; thus, the only real issue is whether American Guarantee acted in bad faith by failing to post, or contribute to the posting, of an appeal bond. Maglio contends that, at the time it sought to appeal the verdicts, there remained a possibility that

13

the Maglio brand verdict could be covered under the American Guarantee policy, and that American Guarantee therefore acted in bad faith by failing to post a bond. As we have elsewhere observed, however, it is a "rare" case in which an insurer is liable for bad faith when there is no duty to provide coverage, see Post, 691 F.3d at 524, and, because American Guarantee had a reasonable basis for its conduct with respect to Maglio, this is not one of those rare cases.[6] See Amica Mut. Ins. Co. v. Fogel, 656 F.3d 167, 179 (3d Cir. 2011) ("[A]n insurer may defeat a claim of bad faith by showing that it had a reasonable basis for its actions.").

The language of the American Guarantee policy provided that it had a duty to defend "when the applicable limit of underlying insurance has been exhausted by payment of claims for which coverage is afforded under this policy." (App. 396.) Here, the District Court correctly determined that the limits of the Charter Oak policy were never "exhausted by payment of claims for which coverage is afforded." Although Charter Oak offered and ultimately paid its $1 million policy for settlement, it only admitted coverage for the Forte brand verdict ($660,000), which did not exceed the policy limit. Because the limit of the Charter Oak policy was never exhausted by the payment of covered claims, the defense provision of the American Guarantee policy was never triggered. Throughout the relevant time period, American Guarantee acted

---

[6] Because the District Court correctly concluded that Maglio's bad faith claim failed because Maglio could not prove that American Guarantee lacked a reasonable basis for its actions, we need not address the Court's alternative holding that Maglio's claim also failed because it did not prove that American Guarantee acted out of self-interest or ill will.

reasonably in assessing Maglio's claim, investigating the claim, continuing to monitor the events of the underlying action, and hiring counsel to provide guidance as to its obligations. The Court correctly concluded that Maglio failed to show that American Guarantee acted in bad faith or breached its contract with Maglio.[7]

The District Court's entry of judgment as to the bad faith and breach of contract claims will be affirmed.

IV.

For the reasons stated above, we will affirm.

---

[7] Maglio contends that the District Court misconstrued its breach of contract claim and erred in failing to rule on it. The Court construed the contract claim to be a claim for breach of the implied covenant of good faith and fair dealing, while Maglio states that its claim was a "pure" contract claim for breach of the policy's express language. While Maglio correctly points out that the legal standard applicable to a breach of contract claim differs from the legal standard applicable to a bad faith claim, the Court's rulings with respect to American Guarantee's duties of indemnity and defense make clear that the Court determined, based on its interpretation of the contractual language, that American Guarantee had not breached a duty to Maglio. The Court's findings and determinations conclusively resolved Maglio's "pure" breach of contract claim, as well as its claims for common law and statutory bad faith.