**UNITED STATES of America**

v.

**Joseph G. DiBONA, et al.**

**Civ. A. No. 83–1311.**

United States District Court,
E.D. Pennsylvania.

Nov. 9, 1984.

Dennis C. Egan, U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Bernard L. Shapiro, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

Defendants Joseph DiBona and David Rights were employed as the President and Secretary-Treasurer respectively of RDL, Inc. RDL, Inc. is also a named party to

this action. They have been charged with, *inter alia,* violations of 31 U.S.C. § 3729 prohibiting the making of false claims for payment by the United States government.

Defendants have filed a motion for reconsideration of our Order granting partial summary judgment in favor of plaintiff.

Prior to the commencement of this civil action, DiBona and Rights were indicted and charged with three counts of making false statements to the government in violation of 18 U.S.C. § 1001. The two defendants entered guilty pleas on these charges.

RDL, Inc. is engaged in defense contract work as a subcontractor. Among the many requirements the government imposes upon defense contractors is the obligation to file certificates which certify that the cost and pricing data submitted with the proposal was accurate, complete and current.[1] If this certificate was not filed, RDL would have been statutorily barred from receiving payment on its work. The evidence showed that the defendants inflated the actual number of hours worked.[2] After pleading guilty to making false statements, this action was brought under the False Claims Act, 31 U.S.C. § 3729 based upon the same operative facts to which defendants pled guilty to in the criminal action.

Section 3729 reads in part,

... [A] person not a member of an armed forces of the United States is liable ... if the person

(1) knowingly presents or causes to be presented to an officer or employee of the government or a member of an armed force a false or fraudulent claim for payment or approval; ....

The government moved for partial summary judgment against the defendants arguing that they were estopped from denying their liability under the False Claims

Act because of their guilty pleas in the antecedent criminal proceeding.

The court granted the motion as to DiBona and Rights only. It excluded RDL, Inc. holding that it had not been found guilty in the antecedent proceeding.[3] RDL was free to deny its liability in the civil proceeding.

The government asks us to reconsider the legal grounds upon which the decision was made. It is their position that RDL is liable, not on the theory of collateral estoppel, but rather on the principal of respondeat superior.

DiBona and Rights continue to contend that the doctrine of collateral estoppel is inapplicable since the elements of the antecedent criminal action are different from the present civil action.

Part I of the discussion will address DiBona and Rights' claim, Part II will discuss the doctrine of respondeat superior as applied to RDL. Part III deals with the government's motion to strike defendants' affidavit.

Part I—Partial Summary Judgment Against DiBona and Rights.

 Collateral estoppel is the principal which bars relitigation between the same parties issues actually determined at a previous trial. When an ultimate issue of fact has once been determined by a valid and final judgment, that issue is precluded from again being litigated between the same parties in any future lawsuit. *Ashe v. Swenson,* 397 U.S. 436, 443, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469 (1970). Furthermore, it is well established that prior criminal convictions may work an estoppel in favor of the government in a subsequent civil proceeding. *Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 568, 71 S.Ct. 408, 413, 95 L.Ed. 534 (1951).

 DiBona and Rights pled guilty to submitting false statements in violation of 18 U.S.C. § 1001. It reads

1. This was required of RDL by 10 U.S.C. § 2306(f).

2. Transcript of Change of Plea Hearing, Criminal No. 82–172.

3. RDL, Inc. was indicted but the charges were withdrawn as part of an arrangement with the two defendants.

Whoever ... knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact or makes any false fictitious or fraudulent statements ... shall be fined not more than $10,000 or imprisoned not more than five years or both.

The issues determined in the criminal action were that the defendants knowingly made a false statement setting forth the costs incurred and anticipated to be incurred in performance of the contracts.

Defendants stress that the only issue decided was that of whether a false statement was made. 31 U.S.C. § 3729(1) is a provision relating to false claims and therefore the court erred in granting plaintiff's motion since this issue was not before the court in the earlier action.

While at first blush such reasoning seems persuasive, a closer examination of the elements of the offense coupled with the well developed case law of this circuit yields to a different conclusion.

The elements necessary to establish liability under § 3729(1) are:

(1) knowingly presenting or causing to be presented;

(2) to a government officer or employee, or member of the armed forces;

(3) a false claim for payment or approval.[4]

The real issue is whether the false statement also amounts to a false claim.

Two cases which are not dissimilar to these facts are instructive on this issue. In *United States v. Hibbs*, 420 F.Supp. 1365 (E.D.Pa.1976); rev'd on other grounds, 568 F.2d 347 (3d Cir.1977) defendant was a real estate broker who was convicted on criminal charges of filing false statements with the Federal Housing Administration (FHA). Hibbs acted as a broker in the sale of a number of properties for which the buyers applied for FHA mortgages. Prior to issuing an FHA backed mortgage, the agency assigns an appraiser to inspect the property and determine if its condition meets the agency's specifications. Often times the appraiser requires the broker to obtain certification from a contractor that the structure complies with these FHA guidelines. The FHA will not issue a mortgage on the property without such certification.

Hibbs filed false certificates verifying the structure. Partially due to the substandard conditions of the houses, the homeowners defaulted on the mortgages requiring the FHA to reimburse the mortgage holders.

Hibbs was convicted on criminal charges of filing false statements. The government then brought suit under the False Claim Act. The court held:

Hibbs' conviction on the criminal charges *estops* him from disputing in this suit that he caused to be submitted to the FHA false certificates as to the conditions [of the houses] which are in issue in this case for the purpose of influencing action by the FHA.

*Hibbs*, 1370.

The court went on to hold that the false claim was the claim for reimbursement by the mortgagee. Even though an innocent party received reimbursement, it was a false claim since the mortgage would not have been issued but for the false certificates filed by Hibbs. *Id.* at 1371. Citing *United States v. McNinch*, 356 U.S. 595, 78 S.Ct. 950, 2 L.Ed.2d 1001 (1958); *United States v. Tieger*, 234 F.2d 589 (3d Cir.1956), *cert. denied*, 352 U.S. 941, 77 S.Ct. 262, 1 L.Ed.2d 237 (1956); *United States v. Veneziale*, 268 F.2d 504 (3d Cir.1959).[5]

Defendants' situation is similar to *Hibbs*. Both were convicted of filing false statements. As in *Hibbs*, had DiBona and

---

**4.** The necessary fourth element is one going to the damages. This issue will not be affected by the court's ruling today.

**5.** "Thus the wrong of the defendant was an important, even an essential factor in subjecting the government to an enforceable demand for money. [I]t has long been settled that a fraudulently induced contract may create liability under the False Claims Act when that contract later results in payment thereunder by the government, whether to the wrongdoer or someone else." *Veneziale*, 505.

Rights not filed the necessary certificates, they would have been statutorily unable to receive payment on their work. The facts establish a nexus between payments to be received from the government and the filing of the false statement.

The *Hibbs* decision does not stand alone in our circuit. In *United States v. Bornstein*, 361 F.Supp. 869 (D.N.J.1973), *rev'd on other grounds*, 504 F.2d 368 (3d Cir. 1974), *cert. granted* 420 U.S. 906, 95 S.Ct. 823, 42 L.Ed.2d 835 modified, 423 U.S. 303, 96 S.Ct. 523, 46 L.Ed.2d 514 (1976), *vacated and remanded*, 530 F.2d 964 (3d Cir.1976) defendants pleaded guilty to filing false statements with the government. Like defendants here, they were engaged in defense work supplying materials which, although free of material defect, were falsely marked to conform to the government's specifications.

The court held that it was inescapable that defendants had violated the False Claim Act by knowingly affixing false markings to the materials and by certifying that all materials furnished conformed to government specifications. This action caused the false claims to be presented to the United States for payment. *Bornstein*, 874. Again, the nexus the court found was the filing of a false statement and the ability to participate in and be paid for government contract work. The false statement is the necessary first and foremost step that needs to be taken. Were it not for the filing of defendants' false certification, this issue would not even be before the court for they would have been unable to participate in the contract work. The false statement and the false claim are two sides of the same coin, issues which arise out of the same core of operative facts. As the Supreme Court said in *United States v. Neifert-White*, 390 U.S. 228, 88

S.Ct. 959, 19 L.Ed.2d 1061 (1967), "an action which has the effect of inducing government to part with money would be a claim under this Act." *Id.* at 232, 88 S.Ct. at 961. Collateral estoppel will properly lie against the defendants, DiBona and Rights, on the issue of false claims. *Hibbs, supra; Bornstein, supra.*

 Defendants' conviction under 18 U.S.C. § 1001 was to contract numbers DAAA–25–72–A–0578/BA04 and 86RA–DQ7605/(F16).[6] Defendants are estopped on the issue of liability as to these two contracts only. Since this is a partial summary judgment, defendants are free to fully litigate the issue of damages. To recover anything beyond the statutory penalty of $2,000 the government must prove that it sustained damages by reason of the false claim. *United States v. Klein*, 356 F.2d 983 (3d Cir.1966). Additionally, the government must show that defendants submitted their invoices to the general contractor for payment.[7]

 Lastly, defendants assert that the law mandates a finding of intentional fraudulent conduct on their part before liability attaches under § 3729(1). The specific words "intent to defraud" are found in subsections 4 and 5 of the False Claim Act. Defendants are charged with violation of subsection (1). This subsection does not address "intent to defraud", it reads:

(1) *Knowingly* presents, or causes to be presented, to an officer or employee of the government or a member of an armed force a *false or* fraudulent claim for payment or approval. (emphasis added)

The drafters specifically used the disjunctive form of "or" rather than "and". The legislatures could have written in, had they chosen to, the requirements of "intent to defraud", yet it is absent from the lan-

---

6. The government's briefs and complaint contain errors as to the contract codes. The government has referred to DA04 instead of BA04 on occasion when indicating the contract number. However, the numbers proceeding the slash have been correct. The government in some of its briefs has correctly identified the contracts in question. Defendants pleaded guilty to violations associated with contracts

DAAA–25–72–A–0578/BA04 and 86RA–DQ–67605/(F–16) only.

7. It is not necessary that the wrongdoer be in a direct contractual relationship with the government in order to be liable under this act. *Bornstein, supra.*

guage of § 3729 until subsection 4. The word "knowingly" is the first requirement of subsection (1). This issue is not one of first impression.

Five of the eleven circuits have spoken directly on whether specific intent to defraud is a necessary element of this specific violation, including the Third Circuit in *U.S. v. Rohleder*, 157 F.2d 126 (1946) (evidence was sufficient to show that defendant *knew* that the bids being submitted for Navy approval were not bona fide).[8] All five cases have held that the government is required to prove that defendants knew the claims to be false.

Part II—RDL, Inc.

It seems but a truism to state that corporations may act only through persons. *United States v. Hougland Barge Line, Inc.*, 387 F.Supp. 1110 (W.D.Pa.1974). It follows that the fraud of an officer of the corporation may be imputed to the corporation when his conduct was (1) in the course of his employment and (2) for the benefit of the corporation.[9] The third circuit has held that an officer acting for the corporation may make that corporation vicariously liable under the doctrine of respondeat superior. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3rd Cir.1978).

DiBona was the highest ranking officer of the corporation. Rights was its Secretary-Treasurer. The apex of power in RDL, Inc. was vested in these two men. The factual questions concerning the scope of their authority and whether benefits inured to RDL, Inc. are not present here.

DiBona and Rights point to *United States v. Kates*, 419 F.Supp. 846 (E.D.Pa. 1976) for the proposition that collateral estoppel applies only to the defendants who pleaded guilty and not to their principals. This court believes that the defendants miscomprehend the holding of *Kates*.

In *Kates* numerous defendants were brought to trial for violations of the False

Claims Act. In an antecedent criminal proceeding some of the defendants were granted immunity and were required to testify against the others on conspiracy charges.

The court held that admissions of filing false claims by those granted immunity in the criminal action could be used against them in the civil action to estop them from denying liability. Furthermore, in one instance, the corporation was held liable through the action of its president even though the corporation was not convicted on criminal charges.

The case law supports the government's position that RDL, Inc. may not now deny its liability after its top officers, acting through the corporation, admitted to violations of the False Claims Act.

Part III

Through an Order dated June 29, 1984 the court inadvertently ordered defendants' Exhibit 5 to be struck from the pleadings. That portion of the Order will be vacated. Defendants' motion for summary judgment on the basis of exhibit 5 (an affidavit) was denied in that same Order. Again, defendants ask the court to grant summary judgment on the basis of this affidavit.

The affidavit does not make their false statements truthful, nor can it overturn their guilty pleas. It is relevant only to the issue of damages which is not before the court at this present moment. Defendants will have an opportunity in the future to present their argument on the lack of any causal connection between their action and the damages suffered by the United States government. The defendants' motion for summary judgment will be denied.

---

**8.** Other circuits which agree with this interpretation are, the seventh, *U.S. v. Hughes*, 585 F.2d 284 (1978); the second, *U.S. v. Foster Wheeler Corp.*, 316 F.Supp. 963 (S.D.N.Y.1970), modified on other grounds, 447 F.2d 100 (1971); the sixth, *U.S. v. Ekelman & Associates, Inc.*, 532 F.2d 545 (1976); the fifth, *U.S. v. Aerodex*, 469 F.2d 1003 (1972).

**9.** 10 W. Fletcher, *Cyclopedia Corporation* § 4886, p. 399 (rev. ed. 1978).