**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Leon WIGHT, a/k/a Leon Wight Ramazanoff, Defendant-Appellant.**

**No. 86–3070.**

United States Court of Appeals, Fourth Circuit.

Argued March 5, 1987.

Decided May 29, 1987.

As Modified on Denial of Rehearing Feb. 25, 1988.

is without merit. Appellant's Brief at 21.

**194**

John J. Mullenholz (Neill, Mullenholz & Shaw, Washington, D.C., on brief), for defendant-appellant.

Theresa Barnes-Pirko, Civ. Div., Dept. of Justice (Richard K. Willard, Asst. Atty. Gen., Washington, D.C., Henry E. Hudson, U.S. Atty., Alexandria, Va., Michael F. Hertz, Director, Rita S. Geier, Asst. Director, Washington, D.C., on brief), for plaintiff-appellee.

Before PHILLIPS and ERVIN, Circuit Judges, and MOTZ, United States District Judge for the District of Maryland, Sitting by Designation.

ERVIN, Circuit Judge:

Leon Wight exceeded the scope of his duty by committing criminal acts while working for the United States Agency for International Development ("AID") in India. At the request of an Indian national, Wight acted as a courier, making purchases in Hong Kong and smuggling the purchased items into India. Wight's smuggling operations came to an abrupt end when he was detained at Indian customs, and a search of his baggage yielded undeclared items. After returning to the United States, Wight pleaded guilty to a criminal information charging him with accepting gratuities through his government post in violation of 18 U.S.C. § 201(g) (1982). The government then filed this civil action, seeking to recover the payments Wight received from the Indian national and the proceeds of the goods Wight smuggled into India. Wight now challenges the $70,107 judgment entered against him in the civil suit, claiming that it is unsupported by the evidence. Because we agree, we reverse and remand this case for the entry of a judgment in favor of the government in accordance with this opinion.

## I.

Leon Wight served the government for many years. Wight began working with AID in 1959. For the next twenty-two years he was assigned to various AID missions throughout the world. In June, 1980, Wight landed in New Delhi, India, where he served as the Controller/Management Officer of the AID mission.

While Wight was in New Delhi, an Indian national named Kumar contacted him, asking Wight to act as a courier to bring watches, vitamins, and other articles into India from other countries. Wight willingly participated in the scheme. From February, 1981 to November, 1982, Wight made several trips between New Delhi and Hong Kong. On these trips, most of which occurred during Wight's vacation time, Wight picked up items that Kumar had purchased in Hong Kong and brought them back into India. Kumar then took the items, reimbursed Wight for his travel expenses, and paid Wight a fee for each trip.

Indian authorities finally discovered Wight's activities, which violated Indian customs laws. On November 1, 1982, these authorities detained Wight as he was passing through Indian customs carrying articles for Kumar. Officials searched Wight's luggage and found undeclared articles. Indian authorities subsequently searched Wight's home and seized his accounting records.

Wight was reassigned to AID headquarters in Washington, D.C. The United States government filed a two-count crimi-

nal information against him. Count One alleged that Wight had been issued a diplomatic passport entitling him to diplomatic courtesies, including passage through Indian customs without having his luggage searched. Wight was charged with receiving over $70,107 from Kumar for acts performed other than those within the scope of his official duties, in violation of 18 U.S.C. § 201(g). Count Two charged Wight with knowingly and wilfully submitting false tax returns, in violation of 26 U.S.C. § 7206(1) (1982). Wight pleaded guilty to this criminal information. As a result of his plea, Wight was incarcerated, was fined $10,000, and was assessed federal income tax penalties of $22,820.

The government continued its pursuit of Wight by filing this civil action in October, 1985, seeking damages in the amount of the payments Wight received from Kumar and the profits from the sale of the smuggled goods. The government moved for summary judgment against Wight, asserting collateral estoppel on the basis of the criminal information and the plea agreement in the earlier criminal action. After a hearing on the government's motion, the district court granted partial summary judgment for $70,107, the amount appearing in the criminal information.[1]

At trial, the government sought additional damages beyond the $70,107 already awarded in partial summary judgment. The lower court, however, entered judgment against Wight for $70,107, based on the partial summary judgment. This appeal followed.

## II.

On appeal, Wight first contends that the trial court erred in holding that he was an agent of the government for purposes of 18 U.S.C. § 201(g), because his smuggling efforts did not occur within the scope of his employment. Section 201(g) prohibits a public official, other than as provided by law in the discharge of his duties, from seeking, accepting, or receiving anything of value "for or because of any official act performed or to be performed by him." *See, e.g., United States v. Drumm*, 329 F.2d 109 (1st Cir.1964) (Department of Agriculture poultry inspector who received money from company whose products he inspected was liable to government under § 201(g) for payments received).

We see at least two problems with Wight's argument. First, as Wight himself admits, at least some of his smuggling activities took place during working hours. In his affidavit, Wight stated that he was on government business in October, 1980, when he brought goods into India for Kumar. Also, Wight testified that he took a family vacation trip to the Middle East at the government's expense and carried back items for Kumar.

■ Second, and more importantly, Wight specifically pleaded guilty to the criminal information charging him with using his official status to bring goods into India, in violation of § 201(g). In making this plea, Wight clearly acknowledged his agency status for purposes of § 201(g). Consequently, Wight is collaterally estopped from denying his liability in the government's civil suit. *See United States v. DiBona*, 614 F.Supp. 40 (E.D.Pa.1984) (where corporation's officers had pleaded guilty to violating False Claims Act in earlier criminal proceeding, corporation was collaterally estopped from denying liability in subsequent civil Federal Claims Act suit).

## III.

■ In Wight's case, however, the application of collateral estoppel does not extend beyond the determination of liability. We reject the government's position, which the district court apparently adopted, that

---

1. The district court based its grant of partial summary judgment on the concept of "judicial admission," which was, in this case, a misnomer for collateral estoppel. If viewed as a judicial admission, the plea agreement would have served only evidentiary purposes and would not have been binding upon the court. *See Enquip,* *Inc. v. Smith-McDonald Corp,* 655 F.2d 115, 118 (7th Cir.1981). In this case, it is evident that the court below actually relied upon collateral estoppel in its ruling. The government proceeded upon a collateral estoppel theory; the court questioned both parties on the issue-preclusive effect of the plea agreement.

Wight is collaterally estopped from challenging the amount of the damage award because he pleaded guilty to the criminal information. We reach this conclusion because the specific damage award was not included as an essential part of Wight's plea agreement.

Collateral estoppel or issue preclusion is premised on the notion that a judgment in a prior suit "precludes relitigation of issues actually litigated and necessary to the outcome of the first action." *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 326 n. 5, 99 S.Ct. 645, 649 n. 5, 58 L.Ed.2d 552 (1979) (citing 1B J. Moore, *Moore's Federal Practice* ¶ 0.405(1), at 622–24 (2d ed. 1974)). When determination of an issue in a prior action was necessary and essential to the judgment, the parties to a second action are precluded from later raising that issue. *See, e.g., United States v. Colacurcio,* 514 F.2d 1, 6 (9th Cir.1975). The doctrine of collateral estoppel may apply to issues litigated in a criminal case which a party seeks to relitigate in a subsequent civil proceeding. *See Emich Motors Corp. v. General Motors Corp.,* 340 U.S. 558, 568, 71 S.Ct. 408, 413, 95 L.Ed. 534 (1951). In some instances, the criminal conviction may be a plea agreement: a defendant is precluded from retrying issues necessary to his plea agreement in a later civil suit. *See, e.g., DiBona,* 614 F.Supp. at 41–43.

The critical issue in this case, then, is whether or not the amount of damages was a necessary and essential element of the plea agreement that Wight entered. Wight's plea agreement reads, in pertinent part:

It is the government's understanding that the defendant, LEON WIGHT, will at this time waive indictment and plead to an Information previously filed with the Court. Count One of the Information charges the defendant, that in his position [sic] an employee of the USAID/India Mission, a public official, he accepted gratuities for himself from Y.M. Kumar in New Delhi, India, for or because of official acts to be performed by him, in violation of Title 18, United States Code, Section 201(g). A violation of this section carries a maximum penalty of two years in prisonment [sic] and/or a $10,000 fine or both.

The plea agreement, unlike the information, does not state that Wight accepted over $70,107 from Kumar. The agreement does not mention a specific sum, but simply states that Wight "accepted gratuities" in violation of § 201(g). The statute contains no minimum amount which must be satisfied for a conviction. In our view, the fact that Wight accepted some remuneration for his smuggling activities was the only fact essential to his conviction under § 201(g). Since the amount of his remuneration was not a necessary part of the plea agreement, the district court should not have estopped Wight from contesting the $70,107 amount.

This conclusion is supported by our decision in *Moore v. United States,* 360 F.2d 353 (4th Cir.1965), *cert. denied,* 385 U.S. 1001, 87 S.Ct. 704, 17 L.Ed.2d 541 (1967). In *Moore,* a taxpayer sought a refund for alleged overpayments of federal income taxes for the 1955–58 period. The government counterclaimed for allegedly unpaid taxes, plus a penalty for fraud. As evidence of fraud, the government offered the taxpayer's criminal conviction for tax evasion during the years in question. The taxpayer argued that the government was collaterally estopped from redetermining, in the counterclaim, the amount of taxes he owed since the government had stipulated the amount owed in the earlier criminal proceeding. We approved the district court's ruling that the government was not estopped "because the determination of an exact liability was not 'essential to the judgment.'" *Id.* at 356, quoting *Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 601, 68 S.Ct. 715, 721, 92 L.Ed.2d 898 (1948). We noted that the tax evasion conviction did not require proof of a specific sum of taxable income. *Id.* at 357. Similarly, Wight's conviction under § 201(g) did not require proof of a particular amount of gratuities accepted; Wight, then, is not estopped from challenging the amount of these gratuities in the government's suit.

Our conclusion is also bolstered by the government's failure to provide evidentiary support for the $70,107 amount in the criminal information. At the initial hearing, the district judge granted partial summary judgment against Wight for $70,107, solely on the strength of the criminal information. During the bench trial before another district judge, the government did not introduce any evidence to support the award. At the start of the trial, the judge asked where the $70,107 figure came from; the government's only response was a reference to the guilty plea based on the criminal information. Counsel for the government admitted that "the $70,000 was an amount that was pled to, but there doesn't seem to clearly be an amount here that is the $70,000." We also note that Wight did not have access to his accounting records when he entered into the plea agreement. The government had seized these records, making it difficult for Wight to contest the $70,107 figure. At trial, it appears that Wight was not able fully and fairly to litigate the damages issue, as is required for collateral estoppel to apply. *See Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971).

### IV.

■ Wight raises a second problem with the $70,107 award. Wight contends that the trial court erred in failing to deduct his expenses for travel, meals, and similar items from the payments he received from Kumar. According to Wight, the $70,107 judgment far exceeds the net profit which he received for acting as a courier. Wight raises a valid point; the trial court erred in failing to deduct his courier expenses before entering judgment against him.

In determining the amount of wrongful profits that a principal may recover from an agent, the trial court must deduct the agent's expenses. *See, e.g., Jay v. General Realties Co.,* 49 A.2d 752, 755 (D.C.1946) ("Stern though the law is in requiring an agent to repay secret profits, it is not so harsh as to say that a principal may recover more than the agent has profited...."

the net rather than the gross profit realized by an agent should be the measure of recovery.") The trial judge recognized this principle in stating that the government was not entitled to recover Wight's gross receipts without a deduction for Wight's expenses. These expenses would not include Wight's income taxes. The burden, of course, was upon Wight to show the amount of expenses he was entitled to deduct. *See, e.g. Wells Fargo Bank & Union Trust Co. v. Dowd,* 139 Cal.App.2d 561, 294 P.2d 159, 169–70 (1956). The trial judge observed that Wight had produced figures showing his net profit to have been $56,507. The judge further noted that the government did not meet its burden of proof on damages; the government supplied only gross figures, instead of showing the actual expenses Wight incurred. Yet, the trial court upheld the $70,107 award, relying on the preclusive effect of the plea agreement for that amount.

The trial court acted improperly in granting summary judgment for $70,107, without taking into account Wight's costs and expenses. Additionally, the lower court erred in granting judgment for $70,107 on the basis of collateral estoppel. Accordingly, we reverse the $70,107 judgment against Wight. Under the peculiar facts of this case, however, we see no necessity for a new trial on damages. Wight concedes that his *net* profits amounted to $56,507, and in its Petition for Rehearing, the government suggests that it would be content with a judgment in that amount. Accordingly, we reverse and remand the case to the district court with directions to vacate the $70,107 judgment and to enter in lieu thereof a judgment in favor of the government and against Wight for $56,507.

REVERSED AND REMANDED.