**In re LLOYD SECURITIES, INC., Debtor.**

**Robert E. SHIELDS, Trustee, Plaintiff,**

**v.**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Defendant.**

Misc. No. 92–0355.
Proceeding No. 90–0985 S.
Adv. No. 91–1090.

United States District Court,
E.D. Pennsylvania.

Feb. 26, 1993.

Warren T. Pratt, Drinker, Biddle & Reath, Philadelphia, PA, for plaintiff.

Paul N. Sandler, Sandler & Marchesini, P.C., Philadelphia, PA, for defendant.

### MEMORANDUM

JOYNER, District Judge.

This case comes to this court upon objections to a report and recommendation of the bankruptcy court that partial summary judgment should be entered in favor of plaintiff, Robert E. Shields, Trustee for the liquidation of the business of Lloyd Securities, Inc. ("LSI" or the "debtor") and against the defendant, National Union Fire Insurance Company ("NUFIC") in the amount of $500,000.

### Background

The relevant facts can be briefly summarized as follows. In June, 1990 the Securities and Exchange Commission ("SEC") filed a request for injunctive relief against LSI in the district court as a result of

allegations of widespread misappropriation of funds belonging to LSI customers by Michael Lloyd and Warren Nachman. Lloyd and Nachman were the sole corporate officers of LSI with decision-making responsibility. They comprised at least the majority of its directors and they were the sole corporate officers, directors, and shareholders of LSI's parent company, IBEX International, Inc., the sole shareholder of LSI. On October 30, 1991, a criminal information was filed against Lloyd in federal district court charging him with wire fraud, mail fraud, bank fraud, and conversion of union benefit plan funds. Lloyd subsequently pleaded guilty to certain counts including defrauding six LSI customers. These six customers' claims form the basis of the Trustee's motion for partial summary judgment.

This court appointed a receiver for the debtor shortly after the SEC filed its request for injunctive relief. Subsequently, the Trustee was appointed to succeed the receiver under a protective decree and the SEC proceeding was transferred to the bankruptcy court on December 30, 1990 to administer the liquidation of LSI. On December 16, 1991 the Trustee filed the complaint in this adversary proceeding seeking to recover the maximum limit of liability for any one person under a fidelity bond issued by NUFIC as to both Nachman and Lloyd, $500,000 each, as a result their fraudulent conduct. The Trustee also sought damages pursuant to 42 Pa.C.S.A. § 8371 for conduct constituting bad faith on behalf of NUFIC. In response to NUFIC's motion for withdrawal of the reference of this proceeding to the bankruptcy court, the district court denied the motion, ordering that the case remain in the bankruptcy court until the case is ready for trial.

LSI first applied for and obtained coverage in NUFIC's bond program effective August 1, 1985. Declarations evidencing LSI's coverage under the Bond were issued for the period 11/2/85 to 11/1/85 and annually thereafter, the final period being 11/1/89 to 11/1/90. The present motion is based on the Bond itself and the latest declaration. LSI's renewal application for that Bond period was signed on behalf of LSI by Warren Nachman, the Executive Vice President. The parties do not dispute that Lloyd and Nachman made fraudulent misrepresentations on the bond applications.

On February 20, 1992 the Trustee filed a motion for partial summary judgment on NUFIC's liability under the Bond and as to the bad faith of NUFIC in its handling of the claim. NUFIC also filed a motion for summary judgment on March 31, 1992 claiming it had not acted in bad faith and that Nachman's misrepresentations on the Bond application justified rescission of the Bond. The bankruptcy court subsequently denied both motions stating that "[w]e must therefore deny that Motion until we resolve all or at least some of our doubts about what the facts are or may be and what specific law exists which addresses the tension points identified herein." *Lloyd Securities, Inc. v. National Union Fire Insurance Co.*, 1992 WL 119362, *12 (Bankr.E.D.Pa.1992) (*"Lloyd I"*). On July 31, 1992, the Trustee once again filed a motion for partial summary judgment on the same issues raised previously. Although the bankruptcy court specifically found that "the underlying factual record is virtually unchanged from *Lloyd I.*" *Lloyd Securities Inc. v. National Union Fire Insurance Co.*, 1992 WL 236162, *4 (*"Lloyd II"*), that court concluded, in short, that the losses caused by Lloyd are covered losses under the Bond; that Lloyd and Nachmans' fraudulent and dishonest behavior cannot be imputed to the Trustee, acting on behalf of LSI's estate, and, therefore, the bond is not rescindable; that NUFIC properly received notice of the losses as soon as practicable so as to preclude rescission; and, lastly, that any decision on the bad faith issue would be premature in light of the ongoing discovery on the issue.

### Standard

Because the issues raised by the summary judgment motion are non-core issues yet related to the bankruptcy case of *In re Lloyd Securities, Inc.*, this court must consider the bankruptcy court's proposed findings and conclusions and subject

those matters to which any party has filed objections to a *de novo* review. 28 U.S.C. § 157(c). Only then can this court enter a final judgment on the motion.

Defendant NUFIC timely filed a total of twenty-four (24) objections, excluding subparts, to the bankruptcy court's report and recommendation. After careful consideration of each of these objections, with a few modifications, this court supports and approves the bankruptcy court's recommendation to grant the motion for partial summary judgment with respect to the acts of Michael Lloyd.

 Because our review is *de novo*, we must apply the same standard of summary judgment review as if the motion were before us initially. In other words, we must consider whether the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show there is no genuine issue as to any material fact, and whether the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). This court is required to determine whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In making this determination, all reasonable inferences must be drawn in favor of the nonmoving party. *Anderson*, 477 U.S. at 256, 106 S.Ct. at 2512. While the movant bears the initial burden of demonstrating an absence of genuine issues of material fact, the nonmovant must then establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990) *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Furthermore, when interpreting the terms of an insurance contract, any ambiguities or uncertainties must be construed in favor of coverage. *Worldwide Underwriters Ins. Co. v. Brady*, 973 F.2d 192 (3d Cir.1992).

### Discussion

In his brief supporting the motion for partial summary judgment, the Trustee sets forth eight assertions which, if proven would justify the grant of summary judgment. These assertions are as follows:

(1) pursuant to the Bond, Lloyd was an employee of the Debtor;

(2) Lloyd's fraudulent and dishonest acts resulted in covered losses under the Bond;

(3) termination of the prior bonds, concomitant with the effectiveness of each succeeding bond, did not preclude coverage of Lloyd's fraudulent and dishonest predating the most recent Bond;

(4) NUFIC cannot rescind the Bond on the theory of fraudulent inducement;

(5) the Bond was not terminated or canceled as to Lloyd prior to November 1, 1989;

(6) discovery of the loss occurred during the Bond period;

(7) NUFIC received adequate notice and proof of loss; and

(8) the Bond was not terminated or canceled in its entirety prior to November 1, 1990.

The bankruptcy court found that NUFIC was prepared to defend only the fourth, fifth and seventh of the above assertions, having advanced no argument against the first, second and eighth assertions and having apparently conceded the third and sixth.

 Despite defendant's lack of explicit opposing arguments, the bankruptcy court conducted a thorough analysis of the first and second issues, finding in favor of the plaintiff on both. First, the bankruptcy court found that Lloyd was an employee of LSI and, thus, his fraudulent conduct was covered under the terms of the Bond. Second, Lloyd's guilty plea agreement evidenced a manifest intent to cause loss to LSI which is also required under the terms of the Bond. After careful review of the bankruptcy court's reasoning, we accept these conclusions.

 NUFIC also argues that each of the prior year's bonds rendered collection for frauds predating the last bond period, com-

mencing on November 1, 1989, uncollectible. This is essentially the issue contained in Plaintiff's Assertions three and six. The bankruptcy judge found that NUFIC had conceded this issue. However, the record does not reflect that NUFIC explicitly conceded any of the arguments advanced by plaintiff in support of his motion for summary judgment. It appears that the bankruptcy court relied upon discussions made during a settlement conference in concluding that NUFIC had conceded this point and NUFIC justifiably objected to the bankruptcy court's use of those discussions in deciding the motion for summary judgment. As indicated above, the express provisions of Fed.R.Civ.P. 56(c) provide that when considering a motion for summary judgment a court cannot look beyond the record to make findings of fact. The necessity of the Rule can be exemplified by no better means than our present attempt to review the bankruptcy court's report and recommendation. Thus, we must address the issue in full.

■ Based on the language of the Bond as well as the deposition testimony of Mr. Anthony Lynch, Manager of the Bond Department at Seabury & Smith which administers NUFIC's group fidelity bond program for members of the National Association of Securities Dealers ("NASD"), we find that the Bond covers losses sustained at any time but only those discovered during the Bond period. The preamble to the Bond states "The Underwriter ... agrees with the Insured ... with respect to *loss sustained by the Insured at any time but discovered during the Bond Period,* to indemnify and hold harmless the Insured ..." (emphasis added). Further, Section Seven of the Definitions section of the Bond states "Payment of loss under this bond shall not reduce the liability of the Underwriter under this bond for other losses whenever sustained ..." The dialogue at Mr. Lynch's deposition proceeded as follows:

Q: Let's assume there were dishonest acts going on continually and that the policy limit in each year, each consecutive year, because the wrongful acts aren't discovered until the final year. Now, how does that work?

A: I am going to give you the basic understanding. That is one continuous loss and the premium policy limit is $500,000 for that one continuous loss, regardless if it's one or five years ...

Q: Even if it's $500,000 in the first two and three years, the bonds cover that continuing course of conduct, but only to the limit of $500,000?

A: That's my understanding.

Based on this evidence, the Bond in question in this case is a discovery bond, that is, the termination of prior bonds does not preclude coverage of employee dishonest conduct predating the most recent Bond, but discovered during the most recent Bond period.

Pertaining to the eighth of plaintiff's assertions, the bankruptcy court simply stated "[w]e have no difficulty in accepting the unopposed eighth assertion." *Lloyd II* at *5. To the contrary, NUFIC's brief in opposition to the motion for partial summary judgment, albeit briefly, raises the argument that under Section 12 of the Bond Conditions and Limitations, the Bond is "terminated or canceled as an entirety immediately upon the taking over of the Insured by a receiver ..." (NUFIC's answer to Trustee's first motion for partial summary judgment, p. 15). However, the bankruptcy court's error is not fatal, for the record supports the conclusion that NUFIC had already received proper notice at the time the receiver actually took over LSI on November 5, 1990, the date Mr. Justin Klein was directed to do so by order of this court.

Before this court can explain our reasoning and answer this question and the many others raised by NUFIC's objections, we must address two of the most important issues involved in this case: (1) how and when did "discovery" of the losses take place and (2) whether Nachman and Lloyd's fraudulent conduct can be imputed to LSI thereby making the Bond subject to rescission or automatically terminated under the Bond terms.

The record indicates that the first time NUFIC received notification of the losses incurred by LSI as a result of Lloyd and Nachman's conduct, was by letter dated October 22, 1990 from Mr. Bazelon, attorney for several of the defrauded customers [1]. The actual terms of the Bond state that "[a]t the earliest practicable moment after discovery of any loss hereunder the Insured shall give the Underwriter written notice thereof and shall also within six months after such discovery furnish to the Underwriter affirmative proof of loss with full particulars." Bond, Section 4. Thus, under the terms of the Bond, the *Insured* must give NUFIC notice of the losses, not a third party such as the customers or their attorney. However, our courts have held that the importance of the notice requirement is that the insurer receive actual notice rather than mere constructive notice. The fact that the actual notice is supplied by the insured or a third party will not affect coverage. *Compagnie des Bauxites v. Ins. Co. of North America*, 794 F.2d 871, 875 (3d Cir.1986). Furthermore, under Pennsylvania law, where the insured provided late notice of the potential claim, the insurance company will be relieved of its responsibilities under the policy only if it can prove actual prejudice resulting from the untimely notice. *Trustees of the Univ. of PA v. Lexington Ins. Co.*, 815 F.2d 890, 896 (3d Cir.1987); *Brakeman v. Potomac Ins. Co.*, 472 Pa. 66, 371 A.2d 193 (1977). NUFIC has not averred sufficient prejudice to warrant a finding that the notice it received was untimely.

Our focus must now shift to how a corporation, the sole directors, officers and principals of which have engaged in an extensive scheme of embezzlement and fraud, can discover the losses caused by these principals. This issue is elementary to our determination of whether LSI gave proper notice to NUFIC as soon as practicable after discovery of the claims and, because the Bond states that the Bond is deemed terminated as soon as the insured becomes aware of any employee dishonesty, whether Lloyd and Nachman's knowledge of their wrongdoing can be imputed to LSI so as to effectively terminate the Bond upon the commencement of their wrongdoing.

Our analysis begins with agency law and the relationship between a principal and an agent or, as in this case, a corporation and its officers. It is a basic precept of agency law and the law of Pennsylvania that a corporation can acquire knowledge only through its officers and agents and that the knowledge of those officers or agents is deemed the knowledge of the corporation. *United States v. Di Bona*, 614 F.Supp. 40, 44 (E.D.Pa.1984); *Pan American World Airways, Inc. v. Continental Bank*, 435 F.Supp. 642, 649–50 (E.D.Pa.1977); *Gordon v. Continental Casualty Co.*, 319 Pa. 555, 181 A. 574 (1935); *Restatement of Agency, Second*, §§ 261 and 272 comment c (1957). This rule applies, however, only to matters within the scope of the agent's authority. *Di Bona*, 614 F.Supp. at 44; *Pan American*, 435 F.Supp. at 650; *Restatement of Agency, Second*, § 272. An exception to this rule is where the agent acts adversely to the interests of the principal. *Restatement of Agency, Second*, § 282. However, the principal may be bound by the acts of the agent even though the agent is acting entirely for his own purposes but who, to a third party, is acting within his apparent authority for the benefit of the principal. *Id.* comment f.

The cornerstone of the discovery and imputation issues is the case of *Gordon v. Continental Casualty Co.*, 319 Pa. 555, 181 A. 574 (1935). In *Gordon*, the chief executive officer and manager of a bank made misrepresentations on an application for a fidelity bond. The Pennsylvania Supreme Court found that, while the officer was acting adversely to the bank in committing the wrongful acts, in procuring the bond he was acting on behalf of the bank not adversely to it, his wrongful acts having been consummated previously. While we recognize that *Gordon* is similar to the

---

1. The bankruptcy court noted that the plaintiffs had presented evidence that they notified the defendant of the potential claims in issue on October 19, 1990. *Lloyd II*, 1992 WL 236162 at *4. Our analysis renders the precise date of when NUFIC received notice irrelevant.

case at hand, we also recognize that Gordon was decided nearly sixty years ago and the law on this issue has not remained static. We also note that as early as 1939, the Third Circuit found that *Gordon* was "somewhat out of line with the general trend of authorities both in Pennsylvania and elsewhere." *First Nat. Bank v. Aetna Casualty & Surety Co.,* 105 F.2d 339, 341 (3d Cir.1939); *accord Puget Sound National Bank v. St. Paul Fire & Marine Ins. Co.,* 32 Wash.App. 32, 645 P.2d 1122, 1127 (1982) (*Gordon* represents the minority rule). Nevertheless, *Gordon* has not been discarded as the general rule in Pennsylvania and the Third Circuit and cannot be overlooked. *Bird v. Penn Central Company,* 341 F.Supp. 291, 295 (E.D.Pa. 1972). However, several other theories have impinged on the applicability of the *Gordon* decision. In *Lloyd I* the bankruptcy court relied on one theory, that of adverse domination and in *Lloyd II,* that court focused on the second, that of legislative intent and public policy underlying the necessity for obtaining the insurance.

■■■ While we find that the bankruptcy court's reliance on the public policy and legislative intent regarding the intended beneficiaries underlying the NASD regulations to be well founded,[2] this court believes that the same result ensues through the application of the adverse domination theory alone.

The adverse domination theory was best described in *Resolution Trust Co. v. Gardner,* 798 F.Supp. 790 (D.D.C.1992) as follows:

> Under the doctrine, a cause of action will be tolled during the period that a plaintiff corporation is controlled by wrongdoers. Tolling is considered appropriate because where the culpable directors and officers control a corporation, they are unlikely to initiate actions or investigations for fear that such actions will reveal their own wrongdoing.

*Id.* at 795.

■■■ The doctrine of equitable tolling of time requirements in law suits pending the discovery or ability to discover the underlying defalcations is a generally recognized concept of jurisprudence. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson,* — U.S. ——, ——, 111 S.Ct. 2773, 2782, 115 L.Ed.2d 321 (1991). Under such circumstances the adverse domination theory is a mere extension of the discovery rule. *In re Numedco, Inc.,* 1991 WL 204908, *4 (Bankr.E.D.Pa.1991). According to this rule, a cause of action is said to accrue for the purpose of the statute of limitations period only when the facts giving rise to the cause of action are known to the plaintiff or could have been discovered by the plaintiff with reasonable diligence. *Vernau v. Vic's Market, Inc.,* 896 F.2d 43, 46 (3d Cir.1990). More recently, the adverse domination theory has been applied to discovery provisions in insurance policies specifically including contracts of fidelity insurance. *California Union Ins. v. American Diversified Sav.* 948 F.2d 556 (9th Cir.1991); *J.I. Corp. v. Federal Insurance Company,* 920 F.2d 118 (1st Cir. 1990); *Paradis v. Aetna Cas. & Sur. Co.,* 796 F.Supp. 59 (D.R.I.1992); *Kehoe v. Peerless Insurance Company,* 1980 WL 1425 (D.Mass.1980); *Admiralty Fund v. Peerless Insurance Company,* 143 Cal.App.3d 379, 191 Cal.Rptr. 753 (1983). Further, while the discovery rule has long been the law of Pennsylvania, *Vernau,* 896 F.2d at 46, the equitable tolling doctrine of adverse domination has also been acknowledged in this circuit. *Harper v. Superior Tool and*

---

**2.** Although the cases cited by the bankruptcy court rely upon the policies and intent underlying other statutes and regulations, *Foster v. National Union Fire Insurance Co.,* 902 F.2d 1316 (8th Cir.1990) (public policy underlying Arkansas Securities Act indicated investing public was intended beneficiary of fidelity bond); *State Farm Mutual Automobile Ins. Co. v. Armstrong,* 949 F.2d 99 (3d Cir.1991) (automobile insurer precluded from rescinding benefits afforded innocent third parties under Financial Responsibility law based on insured's misrepresentations on the applications); *see also Kehoe v. Peerless Insur. Co.,* 1980 WL 1425, *2 (D.Mass.1980) (Investment Company Act of 1940 and SEC regulations which required fidelity bonding enacted to protect shareholders), we find these cases highly instructive in that they indicate that a court may look beyond the plain language of the contract of insurance in determining liability thereunder.

*Die Co.*, 1987 WL 18414 (E.D.Pa.1987); *In re Numedco*, 1991 WL 204908 (Bankr. E.D.Pa.1991); *In re Clinton Centrifuge, Inc.*, 81 B.R. 844 (E.D.Pa.1988).

■ This court is in agreement with the bankruptcy court in finding that the facts presented by this case call for the application of the adverse domination theory to toll the date of discovery until LSI, through a third party, was put on notice of Lloyd and Nachman's wrongdoings. This finding is also in accord with the terms of the Bond which states that discovery of a potential or actual claim by the insured can be by way of notice to the insured by a third party of such claims. Bond conditions and Limitations Section 4. Thus, in this case, LSI can be deemed to have discovered the claims either on August 1, 1990 when it was served with the complaint in the action filed by some of LSI's customers or on June 8, 1990 when the SEC sought injunctive relief against LSI. Thus, Lloyd and Nachman's conduct cannot be imputed to LSI either for the purpose of giving NUFIC grounds to rescind the Bond based on misrepresentations on the application or to terminate the Bond for having knowledge of employee dishonesty. The insured, LSI, was an inanimate corporation which was completely controlled and dominated by Lloyd and Nachman. As such, LSI was unable to discover their wrongdoings.

We reach this conclusion without intimating that the trustee in bankruptcy has any greater rights than the debtor itself and without determining whether the customers have standing to bring this action in their own right. Therefore, any findings of the bankruptcy court as to these matters is harmless.

■ Lastly, while we agree with the bankruptcy court that there remain questions of fact precluding a decision of summary judgment on the bad faith issue, because of the recent developments regarding 42 Pa.C.S.A. § 8371 we will take this opportunity to address the applicability of that statute to this case. The Bond in question was last issued in November, 1989 and ran through November, 1, 1990. Plaintiff is seeking to recover bad faith damages for NUFIC's denial of coverage and dilatory behavior throughout this action. Pennsylvania's bad faith statute became effective July 1, 1990. Recently, the Third Circuit decided the applicability of the statute to contracts of insurance entered into prior to its effective date in *Colantuno v. Aetna Insurance Co.*, 980 F.2d 908 (3d Cir.1992). The court concluded that "Section 8371 may be applied to any insurance contract regardless of date. The inquiry is not the contract date, but rather when [the insurer] is alleged to have committed the bad faith conduct ... or when the insurance company refused to provide benefits to the [insured]." *Id.* at 910 *citing Coyne v. Allstate Insurance Company*, 771 F.Supp. 673, 675 (E.D.Pa.1991). Thus, § 8371 can be applied to the instant insurance policy. As to whether any conduct occurring prior to July 1, 1990 can be used to establish the bad faith claim, the court of appeals was not required to make that determination by the facts before it. *Colantuno*, 980 F.2d at 910. However, prior decisions have found that bad faith claims under § 8371 are limited to conduct or evidence occurring after July 1, 1990. *Mabel v. Equitable Life Assurance Society*, 1992 WL 151781, at *1 (E.D.Pa. June 22, 1992); *Goodman v. State Farm Mutual Automobile Insurance Co.*, 1992 WL 165574, at *1 (E.D.Pa. June 12, 1992); *Batoff v. State Farm Insurance Company*, 1992 WL 59142, at *3 (E.D.Pa. March 20, 1992); *Kauffman v. Aetna Casualty and Surety Co.*, 794 F.Supp. 137, 139 (E.D.Pa.1992); *Coyne v. Allstate Ins. Co.*, 771 F.Supp. 673, 676 (E.D.Pa.1991). Accordingly, we find that plaintiff is precluded from presenting any evidence of NUFIC's alleged bad faith which occurred prior to July 1, 1990.

An appropriate order follows.

### ORDER

AND NOW this 25th day of February, 1993, upon careful and independent consideration of the motion of Plaintiff, Robert E. Shields, Trustee for the Debtor, Lloyd Securities Inc., for Partial Summary Judgment, and after review of the Report and

Recommendation of the United States Bankruptcy Judge David A. Scholl and the objections thereto, it is hereby ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED.

2. The Motion for Partial Summary Judgment is GRANTED in part.

3. Judgment is entered in favor of the Plaintiff and against the Defendant National Union Fire Insurance Company in the amount of $500,000.