Fornaro v. McManus                    CV-97-89-SD    12/16/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Rex Fornaro


         v.                               Civil No. 97-89-SD


James McManus;
George Lindemann;
Bryan Bedford;
Gary E. Ellmer;
Edmund R. McGill
Marketing Corporation of America;
Pamela Cantin


                        O R D E R


     This negligence claim arises from the alleged wrongful

termination of plaintiff Rex Fornaro from employment at Business

Express (BEX).  Before the court are defendants' motions to

dismiss, to which plaintiff objects.


                    Statement of Facts

     In December 1992 plaintiff Fornaro began work as a flight

dispatcher for BEX.  In January 1994 Fornaro called the FAA

hotline complaining of alleged understaffing of flight

dispatchers at BEX.  Shortly thereafter, BEX fired Fornaro.  He

repeatedly contacted various of his supervisors seeking appeal of

his termination, but BEX supervisors never granted Fornaro's

requested appeal.

Fornaro then filed a claim against BEX alleging wrongful discharge and breach of contract in the Connecticut Superior Court. Subsequently, BEX filed for bankruptcy, and the Connecticut action was stayed under the automatic stay of section 362 of the Bankruptcy Code, 11 U.S.C. § 362 (1997).

Fornaro filed the present action against various BEX employees and shareholders alleging negligence.

## Discussion

Defendants George Lindemann, Edmund R. McGill, Bryan Bedford, and Marketing Corporation of America (MCA) move to dismiss the claims against them for lack of personal jurisdiction.

When a court asserts personal jurisdiction over a defendant, it is exercising power which, like all government exercises of power, is subject to constitutional limits. See Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 143 (1st Cir. 1993). Here, those limits stem from the Due Process Clause of the Fourteenth Amendment. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-14 (1984) (citing Pennoyer v. Neff, 95 U.S. 714 (1877)). For the court to properly assert personal jurisdiction, the defendant must have had "certain minimum contacts with [the forum] such that the

2

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Helicopteros, supra, 466 U.S. at 414 (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)); accord Burnham v. Superior Court of Cal., County of Marin, 495 U.S. 604, 618 (1990). Minimum contacts analysis focuses on the expectations of the defendant requiring that his conduct bear such a "substantial connection with the forum [s]tate" that the defendant "should reasonably anticipate being haled into court there." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473-75 (1985) (internal quotations omitted).

The First Circuit uses a three-part test to determine whether the defendant has had sufficient minimum contacts with the forum state to support personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Workers v. 163 Pleasant Street Corp., 960 F.2d 1080, 1089 (1st Cir. 1992).

In this case, personal jurisdiction over defendants Lindemann, McGill, Bedford, and MCA fails for lack of relatedness. The "relatedness" inquiry focuses on the causal

3

nexus between the injury underlying plaintiff's cause of action and the defendants' forum-based activities.  Here, Fornaro's injury by loss of employment is not causally related to defendants' New Hampshire activities, which were minimal at best.  Fornaro's loss of employment was caused by defendants' allegedly negligent acts that occurred at BEX's principal place of business in Westport, Connecticut, where all the individual defendants worked.  Defendants' only New Hampshire activities were brief business trips which bore no relation to plaintiff Fornaro or his employment at BEX.  Thus, plaintiff's injuries arose from defendants' Connecticut activities, not their New Hampshire activities.

Granted, for minimum contacts analysis, it is not always necessary that a defendant engage in activity  in the forum.  Anderson v. Century Products Co., 943 F. Supp. 137, 143 (D.N.H. 1996).  Under the effects test, Calder v. Jones, 465 U.S. 783, 790 (1984), out-of-state activity that is intended to cause a tortious injury in the forum may suffice.  However, defendants' Connecticut activities do not qualify as New Hampshire contacts under the Calder effects test for two reasons.  First, the Calder doctrine applies to out-of-state tortious conduct that is directed at the forum and intended to cause injury there, as opposed to undirected negligence.  California Software, Inc.

4

Reliability Research, 631 F. Supp. 1356, 1361 (C.D. Cal. 1986). Here, Fornaro merely alleges that defendants acted negligently, not intentionally.  Second, and more important, defendants' allegedly tortious Connecticut activities did not cause any effects in New Hampshire because plaintiff lived in New Jersey and worked in BEX's Connecticut offices.

In sum, Fornaro's claims against defendants Lindemann, McGill, Bedford, and MCA have no relation to New Hampshire, and jurisdiction over them is improper.

Defendants Cantin and Ellmer do not contest jurisdiction, presumably because they currently reside and work in New Hampshire.  Discussion will now turn to the claims against them.

First, Fornaro claims that Cantin and Ellmer negligently failed to perform their employer BEX's contractual obligations owed to Fornaro as an employee who enjoyed the substantive and procedural job protections promised in BEX's Employee Handbook. Long gone are the days when the Constitution preserved employers' liberty and property interests in discharging employees for good cause, no cause, or bad cause.  Coppage v. Kansas, 236 U.S. 1 (1915).  Since that time, state courts have carved out significant exceptions to the employment-at-will doctrine, noting that in some cases "the employer's interest in running his business as he sees fit must be balanced against the interest of

5

the employee in maintaining his employment, and the public's interest in maintaining a proper balance between the two." Monge v. Beebe Rubber Co., 114 N.H. 130, 133, 316 A.2d 549, 551 (1974). Under a recognized exception to the employment-at-will doctrine, Snow v. Ridgeview Medical Center, No. 96-2224, 1997 WL 634571, at *6 (8th Cir. Oct. 16, 1997), an employer may not terminate an employee in breach of promises contained in the employee handbook and incorporated into the employment contract. According to Fornaro, BEX's Employee Handbook promised employees both "progressive discipline" as a precondition to termination and, in addition, a right to appeal termination decisions. Fornaro alleges that he was terminated without those procedural and substantive job protections. However, Fornaro's cause of action for breach of contract runs against BEX, his employer, which is the party contractually bound to Fornaro under the Employee Handbook, not against BEX's agents, Cantin and Ellmer, who have no contractual relation with Fornaro. Apparently cognizant of this, Fornaro labels his cause of action against Cantin and Ellmer as negligent failure to perform BEX's contractual duties to Fornaro. However, out of respect to New Hampshire lawmakers, this court remains hesitant to blaze new inroads into the employment-at-will doctrine by recognizing plaintiff's novel cause of action against his employer's agents.

6

Under established tort principles, Cantin and Ellmer owed Fornaro no affirmative duty to perform the contractual obligations that BEX owed Fornaro.  Generally, the law of negligence does not impose such affirmative duties to act for the benefit of others.  See Walls v. Oxford Management Co., 137 N.H. 653, 656, 633 A.2d 103, 104 (1993).  Even if Cantin and Ellmer assumed a duty to BEX to perform BEX's contractual obligations under the Employee Handbook, this is not a duty owed to Fornaro.  The RESTATEMENT notes,

> [a]n agent is not liable for harm to a person other than his principal because of his failure adequately to perform his duties to his principal, unless physical harm results from reliance upon performance of the duties by the agent, or unless the agent has taken control of land or other tangible things.

RESTATEMENT (SECOND) OF AGENCY § 352, at 122 (1958).  Under plaintiff's theory, every breach of contract would entitle the injured party to two claims, one against the party bound by the contract, and another against that party's agents who assumed employment duties to perform the party's contractual obligations.  There is no support for such an extension of the law.

Next, Fornaro sues Cantin and Ellmer for negligently hiring, retaining, and supervising the employees directly responsible for wrongfully terminating his employment from BEX.  RESTATEMENT OF AGENCY § 213, at 458 (1958) provides that "[a] person conducting

an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless . . . in the employment of improper persons or instrumentalities in work involving risk of harm to others . . . ." The New Hampshire Supreme Court has broadened the tort, placing the duty to avoid negligent hiring on not only the employer but also on "[t]hose [employees] who have hiring and firing authority with respect to subordinates." Marquay v. Eno, 139 N.H. 708, 720 (1995). However, plaintiff has failed to claim that his alleged wrongful termination was caused by any specific BEX employee hired by Cantin and Ellmer. In the absence of evidence that Cantin or Ellmer breached their duty to exercise due care in hiring BEX employees, plaintiff has not stated a cause of action for negligence.

Even if Fornaro had stated a claim against Cantin and Ellmer, this court would be inclined to abstain from asserting jurisdiction over the case. Fornaro originally sued his employer BEX for wrongful discharge and breach of contract in Connecticut state court. However, BEX subsequently was placed in chapter 11 bankruptcy, and Fornaro's state court proceedings against BEX were automatically stayed under section 362 of the Bankruptcy Code, which shields a chapter 11 debtor from all actions to collect pre-petition debt.

Thwarted in his efforts to recover against BEX, Fornaro then brought the present action against the named defendants as employees and shareholders of the bankrupt BEX. By its terms, section 362 does not stay actions against co-debtors of the bankrupt party. Under some circumstances, courts have exercised their equity powers under section 105(a) of the Bankruptcy Code, to enjoin actions against co-debtors of the bankrupt party. Section 105(a) of the Bankruptcy Code, 11 U.S.C. § 105(a) (1997), provides, "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." The First Circuit has held that courts have power under section 105(a) to enjoin actions against co-debtors "where the court reasonably concludes that such actions would entail or threaten adverse 'impact' on the administration of the chapter 11 estate." Monarch Life Ins. v. Ropes & Gray, 65 F.3d 973, 978-79 (1st Cir. 1995).

A finding of a "threatened adverse impact" is appropriate when "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." A.H. Robins Co. v. Piccinin, 788 F.2d 994, 999 (1986); see also In Re Metal Center, 31 B.R. 458, 462 (D. Conn. 1983) ("[W]here,

9

however, a debtor and nondebtor are so bound by statute or contract that the liability of the nondebtor is imputed to the debtor by operation of law, then the Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code.").  For instance, when

> [s]uch liability exposes the corporation to both vicarious liability under the doctrine of respondeat superior, see Donsco, Inc. v. Casper Corp., 587 F.2d 602 (3d Cir. 1978), and the risk of being collaterally estopped from denying liability for its directors' actions, see United States v. Ward, 618 F. Supp. 884 (E.D.N.C. 1985) (corporation was collaterally estopped from denying its knowing participation in illegal dumpings as a result of corporate officer's conviction for same); United States v. DiBona, 614 F. Supp. 40, 44 (E.D. Pa. 1984) (because "[i]t seems but a truism to state that corporations may act only through persons," corporation collaterally estopped from denying civil liability under the False Claims Act after corporate officers pled guilty to making such statements in previous criminal trial).

In re American Film Technologies, Inc., 175 B.R. 847 (1994) (other citations omitted)

The doctrines of both collateral estoppel and vicarious liability would transform judgment against BEX's employees in the present action into a judgment against BEX.  Thus maintenance of this action threatens to undermine the relief from all civil actions that section 362 of the Bankruptcy Code confers on BEX as a chapter 11 debtor.  This would usually trigger the court's

10

equity power under section 105(a) to enjoin these proceedings against Ellmer and Cantin.

However, only the bankruptcy court currently administering the chapter 11 estate is granted equity power under section 105(a) to enjoin collateral proceedings brought against co-debtors in another court. There are no known cases in which a district court has invoked section 105(a) to terminate collateral proceedings against co-debtors brought before that court. Nonetheless, this court believes that Burford v. Sun Oil Co., 319 U.S. 315 (1943), permits district courts to abstain from asserting jurisdiction over proceedings against a co-debtor under circumstances where the bankruptcy court administering the chapter 11 estate could have issued an injunction under section 105(a). Burford permits abstention "where deference to a state's administrative processes for the determination of complex, policy-laden, state-law issues would serve a significant local interest and would render federal-court review inappropriate." Fragoso v. Lopez, 991 F.2d 878, 882 (1st Cir. 1993). While Burford is grounded in federalism concerns, which are not at issue in this case, there are important separation-of-powers concerns that arise when a Article III court is called upon to adjudicate a dispute that may adversely impact ongoing proceedings in an Article I bankruptcy court. These separation-

11

of-powers concerns counsel an extension of <u>Burford</u> abstention to avoid interfering with the bankruptcy court's functions in administering the chapter 11 estate. The court highlights the narrowness of this extension of <u>Burford</u> abstention, as it would only apply when the bankruptcy court handling the chapter 11 estate would have power under section 105(a) to enjoin the district court proceedings against the co-debtor. In such a case, the proper administration of the chapter 11 estate is an important enough interest to justify terminating the district court proceedings against the co-debtor, and it makes no difference whether that termination is initiated by the bankruptcy court under section 105(a) or by the district court under <u>Burford</u> abstention.

## Conclusion

For the foregoing reasons, the motions to dismiss of defendants Ellmer and Cantin (document 5), Lindemann, McGill, and Marketing Corporation (document 18),[*] and Bedford (document 24) must be and herewith are granted. James McManus thus becomes the

---

*When this motion was originally filed, defendant James J. Malski was one the moving parties. He, however, was dismissed from the case by order of this court dated July 8, 1997.

sole defendant remaining in this action.

     SO ORDERED.


                        _____
                        Shane Devine, Senior Judge
                        United States District Court


December 16, 1997

cc:    Robert E. Murphy, Jr., Esq.
       Debra Weiss Ford, Esq.
       Peter Bennett, Esq.
       Garry R. Lane, Esq.
       Madeleine F. Grossman, Esq.